IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

RAJION ALTEREK MAYO,

      Petitioner,

v.                                  Case No. 3:22-cv-00108

SUPERINTENDENT, Stevens Correctional Center,

      Respondent.

**PROPOSED FINDINGS AND RECOMMENDATION**

      This matter is assigned to the Honorable Robert C. Chambers, United States District Judge and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. 636(b)(1)(B). Pending before the court is Respondent's Motion to Dismiss and for Summary Judgment (ECF No. 15).

### I.    *RELEVANT PROCEDURAL HISTORY*

**A.    Petitioner's state court criminal proceedings and direct appeal.**

      Petitioner has an extensive history of juvenile delinquency, which steadily increased in severity. (ECF No. 15, Ex. 32 at 7, 15-17).[1] On March 30, 2010, one month before his 18th birthday, Petitioner and another juvenile, J.M., robbed a family at gunpoint in Ritter Park in Huntington, West Virginia. Petitioner and J.M. stole $27 from the husband, and riffled through the wife's purse, but took nothing from it, before leaving the

---

[1] The undersigned will cite to the pagination used in the CM/ECF header at the top of each page of the filed documents (*i.e.,* Page ____ of _____), which may differ from the actual document pagination or that cited by the parties.

scene.  In April of 2010, Petitioner failed to appear for a trial on another juvenile charge that was pending in the Circuit Court of Cabell County, West Virginia (Case No. 10-JD-35), and a capias was issued for his arrest.  (ECF No. 15, Ex. 7).  Then, on July 26, 2010, several months after he turned 18, Petitioner was involved in another attempted armed robbery, during which he shot and killed one of the victims.

Petitioner was arrested on July 29, 2010, and was initially charged in the Circuit Court of Cabell County as a juvenile with respect to the March 30, 2010 Ritter Park robbery and attempted robbery (Case No. 10-JD-245).  (ECF No. 15, Exs. 8, 10). Subsequently, the State filed a petition to transfer those charges to criminal court to be tried as an adult in conjunction with the charges concerning the July 26, 2010 shooting.[2] Following a hearing held on October 14, 2010, the circuit court granted the transfer petition and transferred the juvenile robbery charges to the criminal court.  (ECF No. 15, Ex. 14).  In his juvenile proceedings, Petitioner was represented by attorney Ryan Turner.

On February 17, 2011, a Cabell County grand jury indicted Petitioner on one count of murder "during the commission of a [f]irst [d]egree [r]obbery" concerning the July 26, 2010 shooting incident (Count I), as well as attempted first degree robbery (Count II) and first-degree robbery (Count III) with respect to the March 30, 2010 Ritter Park incident. *State v. Mayo*, No. 11-F-32.  (ECF No. 15, Ex. 15).  Petitioner was represented in the circuit court criminal proceedings by court-appointed counsel, Abraham Saad and John Laishley.

In September of 2011, Petitioner entered into a plea agreement with the State by which he would plead guilty to second degree murder (as charged in a separate

---

[2] The transfer petition is not part of the record before this court.

information) and first-degree robbery (as charged in Count III of the indictment) in exchange for the dismissal of the first degree murder and attempted robbery charges in Counts I and II of the indictment.[3]  The parties agreed that the State could argue for a 40-year sentence for the second-degree murder count and that Petitioner could argue for a 20-year sentence for that offense.  Additionally, the State agreed to recommend no more than a 20-year sentence for first degree robbery and that Petitioner could argue for concurrent sentencing.  *Id.*  At a hearing on September 16, 2011, the circuit court accepted the guilty pleas as set forth above.  (ECF No. 15, Exs. 18, 19).  By sentencing order entered on December 15, 2011, the circuit court sentenced Petitioner to 30 years for second degree murder and a consecutive 20 years for first degree robbery, for an aggregate sentence of 50 years, and the other charges were dismissed pursuant to the plea agreement.  (ECF No. 15, Ex. 20).

Petitioner did not appeal his judgment.  However, he filed several motions for reduction of sentence under Rule 35(b) of the West Virginia Rules of Criminal Procedure, which were denied by the circuit court.  (ECF No. 15, Exs. 21-24).  Apparently, when the court denied Petitioner's first Rule 35(b) motion on June 4, 2013, it mailed the order to the wrong correctional facility, so Petitioner never received it.  (ECF Nos. 21, 22).  Petitioner then filed an amended petition on July 26, 2013, which was denied by the circuit court on September 5, 2013.  (ECF No. 15, Exs. 23, 24).  Significantly, neither of these motions challenged the proportionality of Petitioner's sentence or raised any issues concerning his juvenile transfer proceeding.

---

[3] The written plea agreement is not part of the record before this court.  However, it is summarized in the Supreme Court of West Virginia's opinion in *Mayo v. Terry*, No. 16-0559, 2018 WL 2277135, at *1 (W. Va. May 18, 2018).

Following the denial of his amended Rule 35(b) motion, Petitioner filed an appeal to the Supreme Court of Appeals of West Virginia (the "SCAWV") asserting that he had no notice of the denial of the first Rule 35(b) motion and contending that the circuit court improperly denied the amended motion as untimely and failed to consider the merits thereof. (ECF No. 15, Exs. 25, 26).

On November 24, 2014, the SCAWV affirmed the denial of Petitioner's Rule 35(b) motions. *State v. Mayo*, No. 13-1003, 2014 WL 6634229, *3 (W. Va. Nov. 24, 2014) ("*Mayo I*"). (*See also* ECF No. 15, Ex. 27). The court first found no merit to Petitioner's arguments related to the initial motion and the subsequent mistake in sending his service copy of the order denying the same to the wrong correctional facility. *Id*. at *1. The SCAWV further found that, although the circuit court noted that the amended motion was untimely, it also addressed the merits of the motion, finding that "no circumstances have changed since the [petitioner's] sentencing in this matter." *Id*. at *2. Additionally, the Court remarked that a state sentence within statutory limits is generally not subject to appellate review, absent some "impermissible factor." *Id*.

With respect to Petitioner's first degree robbery sentence, the Court noted that the West Virginia's first degree robbery statute has no statutory maximum limit. *Id*. at *3. Nonetheless, the SCAWV reviewed Petitioner's sentence under Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment to the United States Constitution. *Id*. Those provisions expressly require that criminal penalties be proportionate to the character and degree of the offense and will be considered *per se* disproportionate only if it "shocks the conscience and offends fundamental notions of human dignity[.]" Syl. Pt. 5, *State v. Cooper*, 304 S.E.2d 851 (W. Va. 1983). Otherwise, the court should consider more

objective factors, such as "the nature of the offense, the defendant's past criminal history, and his proclivity to engage in violent acts." *State v. Ross*, 402 S.E.2d 248, 250-51 (W. Va. 1990) (other citations omitted).

> Concerning Petitioner's sentence, the SCAWV specifically found:
>
> [T]he Court here finds that petitioner's sentence does not shock the conscience, especially in light of the fact that petitioner threatened violence in the crime's commission. According to petitioner, he approached his victims in a public park and "pulled a weapon on the guy" before taking his money and fleeing the scene. While petitioner noted that the weapon was not an actual firearm but instead an air gun, he did not state that it had the appearance of a working firearm. Based upon these factors, the Court finds that petitioner's sentence does not shock the conscience.
>
> Further, the Court finds that based upon the nature of the offense committed, as well as petitioner's previous behavior, the first degree robbery sentence imposed upon him by the circuit court does not violate the proportionality principle contained in Article III, § 5 of the West Virginia Constitution. Petitioner was originally indicted on one count of felony murder in the commission of first degree robbery, one count of attempted first degree robbery, and one count of first degree robbery, all stemming from separate and distinct events. Moreover, petitioner pled guilty to second degree murder after one robbery victim died from a gunshot sustained during the commission of that crime. As such, it is clear that petitioner's twenty year sentence for first degree robbery is proportionate, and we decline to find error in the circuit court's denial of petitioner's amended motion for reduction of sentence.

*Mayo I*, 2014 WL 6634229, at *3. Thus, the SCAWV affirmed the denial of Petitioner's amended Rule 35(b) motion and declined to address Petitioner's other assignments of error. *Id*. at 4.

## B. Petitioner's initial state court habeas corpus proceedings

On February 26, 2015, Petitioner filed a *pro se* habeas corpus petition in the Circuit Court of Cabell County. *Mayo v. Ballard*, No. 15-C-142. (ECF No. 15, Ex. 29). The initial petition asserted violations of Petitioner's federal and state constitutional rights grounded in his allegedly disproportionate sentence to that of his juvenile co-defendant. (*Id*. at 3,

Ground One).  It also alleged that Petitioner's trial counsel provided ineffective assistance of counsel by:  (1) failing to thoroughly and independently investigate the crime at issue; (2) failing to keep Petitioner informed about the evidence and disposition of the charges; (3) failing to effectively conduct adequate plea negotiations and sentencing proceedings; (4) inducing Petitioner to plead guilty by making false representations and promises concerning his potential sentences; and (5) failing to have the charges bifurcated.  (*Id.* at 3-4, Ground Two).

Attorney Timothy Rosinsky was subsequently appointed to represent Petitioner. (ECF No. 15, Ex. 30).  Petitioner, by counsel, filed an amended petition on January 19, 2016.  (ECF No. 15, Ex. 31).  The amended petition noted that, despite raising numerous grounds in the *Losh*[4] checklist Petitioner previously filed, he was affirmatively waiving all grounds except for his claim concerning a disproportionate sentence.   (*Id.* at 2). Petitioner's claim was grounded in his contention that his juvenile co-defendant was charged with attempted first degree robbery and first degree robbery stemming from the same March 30, 2010 Ritter Park incident for which Petitioner was indicted, but his co-defendant was never transferred to the court's adult criminal jurisdiction. (*Id.*)  Petitioner asserted that because his co-defendant was allowed to remain in the court's juvenile jurisdiction, Petitioner was treated "much more harshly" and the disparity in their sentences was "inappropriately disproportionate."  (*Id.* at 2, 5).  Petitioner further clarified that he was challenging only his first degree robbery sentence and not his second degree murder sentence.  (*Id.* at 5).

---

4 In *Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981), the SCAWV held that an omnibus hearing under W. Va. Code § 53-4A-1 is *res judicata* as to all matters raised therein, or those claims which should have, with reasonable diligence, been known to the petitioner.  The failure to raise claims under those circumstances may constitute a knowing and intelligent waiver of such claims and bar them from consideration in future proceedings.  The *Losh* checklist specifies those grounds to be raised and waived by the petitioner.

Petitioner's omnibus evidentiary hearing concerning his amended petition was held on May 12, 2016. (ECF No. 15, Ex. 32). At the beginning of the hearing, Petitioner's counsel reiterated to the court that, although Petitioner had initially asserted numerous grounds in his original *Losh* list, he and Petitioner subsequently decided to pursue only the claim of disproportionate sentencing. (*Id.*, Ex. 32 at 5). Petitioner was the only witness at the omnibus hearing. He indicated that he met with his habeas counsel at his correctional facility "at least two I think maybe three times." (*Id.* at 11). Petitioner also acknowledged that he and his habeas counsel had "gone through all the grounds and all the evidence that [he] could assert." (*Id.*) Petitioner then affirmed that both he and his habeas counsel agreed that there was "no evidence" to support any of the claims asserted in his previously filed *Losh* list, including his acknowledgment that he was "waiving [his] right to assert any denial of a preliminary hearing" and any other irregularities or errors in his initial criminal proceedings. (*Id.* at 11-12). Petitioner also confirmed that he was aware that the first degree robbery charge exposed him to a minimum sentence of 10 years in prison with no statutory maximum. (*Id.* at 13).

At the conclusion of his direct examination, his habeas counsel asked Petitioner if there was anything else he would like to address. (*Id.* at 14). Petitioner responded by stating:

> I understand that I had to be punished. And with all due respect, when I had the transfer hearing to adult status for the robbery, it just didn't seem fair to me. I knew I was facing a murder charge, but I wasn't found guilty. I wasn't indicted on it or nothing yet, so I just feel like it was two separate situations and it could have been handled better.

(*Id.* at 15).

On cross-examination, Petitioner acknowledged that he had an extensive criminal history as a juvenile, and that his criminal conduct had been escalating prior to his most

recent arrest. (*Id.* at 15-17). At the conclusion of Petitioner's testimony, his counsel reiterated that "my client waives the other *Losh* list issue[s] for the record and he is just making the claim for the disproportionate sentence." (*Id.* at 17-18). Petitioner did not voice any objection to his counsel's representation. (*Id.*)

On May 26, 2016, the circuit court entered its order denying Petitioner's amended habeas corpus petition. (ECF No. 15, Ex. 33). In pertinent part, the court's order stated:

> This Court finds that Petitioner pled guilty to First Degree Robbery knowing that he was charged and would be sentenced as an adult, which carried a minimum of 10 years in prison and could carry a life sentence. Further, this Court finds that he admitted to killing a person a short time after committing the initial robbery. He was sentenced to twenty (20) years (far from the maximum possible) on the First Degree Robbery and thirty (30) years for the Second Degree Murder. This Court finds that such sentence was not so disproportionate to the crime that it ". . . shocks the conscience and offends the fundamental notices of human dignity, thereby violating West Virginia Constitution, Article III, Section 5. [Syl. Pt. 9, in part, *State v. Hargus*, 232 W. Va. 735, 753 S.E.2d 893 (2013)].

(*Id.* at 6). The court further found that there were "sufficient and reasonable differences between the Petitioner and his co-defendant . . . to justify the [Petitioner's] severer sentence." (*Id.*) Thus, the court found that Petitioner's first degree robbery sentence was not unconstitutionally disproportionate to the offense or in relation to any sentence imposed on his juvenile co-defendant. (*Id.*)

### C.   Petitioner's first state habeas appeal.

On June 14, 2015, Petitioner appealed to the SCAWV, challenging the denial of his disproportionate sentence claim. *Mayo v. Terry*, No. 16-0559, 2018 WL 2277135 (W. Va. May 18, 2018) ("*Mayo II*"). (*See also* ECF No. 15, Ex. 34). Petitioner filed his *pro se* appellate brief on September 27, 2016, wherein he alleged, as his sole assignment of error, that the circuit court abused its discretion in denying his request for post-conviction habeas corpus relief as it failed to "consider the totality of the circumstances regarding

the Petitioner's and his co-defendant's similarly situated positions." (ECF No. 15, Ex. 35 at 6). After Petitioner filed his *pro se* brief, the SCAWV issued an order remanding the matter to the circuit court for the appointment of counsel. (ECF No. 15, Ex. 37 at 1, n.1). The circuit court appointed Jason Goad as appellate habeas counsel for Petitioner, who filed a supplemental appellate brief on May 16, 2017. (ECF No. 15, Ex. 36).

In his supplemental brief, Petitioner asserted four assignments of error related to his claim of disproportionate sentencing: (1) "Petitioner did not waive his Eighth Amendment rights when he entered a plea;" (2) "The statutory limits of West Virginia Code 61-2-12 should be subject to Eighth Amendment scrutiny;" (3) "Petitioner's plea does not limit his ability to appeal the robbery sentence;" and (4) "Petitioner's twenty year sentence for first degree robbery is disproportionate and excessive." (*Id*. at 7-11). While his appeal was pending before the SCAWV, Petitioner filed another unsuccessful *pro se* motion for reduction of sentence in his criminal case in the Circuit Court of Cabell County. (ECF No. 15, Ex. 37). In pertinent part, Petitioner claimed that his robbery sentence was disproportionate when compared to sentences imposed in other jurisdictions. (*Id*. at 6-11).

On May 18, 2018, the SCAWV affirmed the circuit court's order denying Petitioner's request for post-conviction habeas corpus relief. *Mayo II*, *supra*, 2018 WL 2277135, at *3. (*See also* ECF No, 15, Ex. 38). In *Mayo II*, the SCAWV adopted the proportionality analysis utilized in *Mayo I* and reiterated that it "reject[ed] petitioner's argument that his twenty-year sentence for first degree robbery is unconstitutionally disproportionate to the offense." *Id*. The SCAWV also agreed with the circuit court's conclusion that Petitioner's sentence for first degree robbery was not unconstitutionally disproportionate when compared to the punishment his juvenile co-defendant received,

recognizing that Petitioner "admitted that his unlawful conduct intensified over time and that his 'last crimes were way more severe,'" despite his claims that both he and his co-defendant had similar criminal histories. *Id*. at *3. Additionally, the SCAWV declined to address Petitioner's claim made during his omnibus hearing that the circuit court's decision to transfer his robbery charges to adult status prior to his indictment for murder "'did not 'seem fair,'" noting that Petitioner "never alleged that the transfer of the first degree robbery charge was erroneous." *Id*. The SCAWV issued its Mandate in *Mayo II* on June 19, 2018. (ECF No. 15, Ex. 39).

### D.    Petitioner's second state habeas corpus petition

On June 29, 2018, Petitioner filed a second *pro se* habeas corpus petition in the Circuit Court of Cabell County asserting that his prior habeas counsel was ineffective for failing to raise any claims regarding errors during his October 14, 2010 juvenile transfer hearing. *Mayo v. Terry*, No. 18-C-351. (ECF No. 15, Ex. 40 at 4-5; Ex. 14). The circuit court appointed Petitioner new counsel, Eric Anderson, and on November 9, 2018, Petitioner, by counsel, filed a *Losh* list, asserting only "ineffective assistance of counsel." (ECF No. 15, Ex. 41 at 3).

On June 28, 2019, Petitioner filed an amended petition for habeas corpus relief and memorandum in support thereof. (ECF No. 15, Ex. 42). The petition alleged that both Petitioner's habeas counsel and habeas appeal counsel were ineffective in failing to raise errors of law made in his juvenile court proceedings and requested access to Petitioner's juvenile records, so that he could review the transcript from his 2010 transfer hearing. (*Id*. at 7, 11-12). Subsequently, the court ordered that Petitioner's juvenile transfer hearing be transcribed and Petitioner was permitted to file another amended

petition and memorandum of law providing more details to support his claims of ineffective assistance of habeas counsel.  (ECF No. 15, Exs. 43, 44).

Another evidentiary hearing was held on February 3, 2020, during which Petitioner and his initial habeas counsel, Timothy Rosinsky ("Rosinsky" or "first habeas counsel") testified.  As noted by Respondent, at the outset of the hearing, the parties acknowledged that the sole issue before the court was the "decision process that [Rosinsky] went through concerning not raising . . . the transfer issues."  (ECF No. 17 at 12, quoting ECF No. 15, Ex. 45 at 6).  Both Petitioner and Rosinsky provided contradictory testimony concerning their communications about the juvenile transfer hearing and their positions regarding whether any viable claims concerning the same should be asserted in the initial habeas corpus proceedings.  (ECF No. 15, Ex. 45, *passim*).[5]

The circuit court found that Rosinsky did not provide ineffective assistance of counsel and that Petitioner had properly waived any challenges to alleged errors in his juvenile transfer proceedings.  Specifically, the court stated:

> While the best cause of action may have been to include petitioner's argument about the juvenile transfer proceeding with a disclaimer that, as petitioner's attorney, he found no legal grounds for the argument and that he was presenting it to satisfy his client, prior habeas counsel's decision to instead present the arguments that had potential merit does not rise to the level of ineffective assistance of counsel. * * * In this case, there is <u>not</u> a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.  After a careful review of Petitioner's allegations this Court finds that the alleged errors in the juvenile transfer process were either baseless or harmless error.

(ECF No. 13, Ex. 46 at 6).  Thus, the court opined that, even if the failure to raise the transfer hearing issues was objectively unreasonable, Petitioner failed to demonstrate the

---

[5] Given the fact that ineffective assistance of habeas counsel is not a cognizable stand-alone claim under § 2254, and that Petitioner has not raised any claims that implicate the *Martinez* exception, the undersigned finds it unnecessary to describe in detail the testimony from the second omnibus hearing.

requisite prejudice to satisfy the second prong of *Strickland v. Washington*, 466 U.S. 668 (1984). (Ex. 46 at 6).

### E.    Petitioner's second state habeas appeal.

On April 24, 2020, Petitioner appealed the circuit court's denial of his second habeas corpus petition to the SCAWV, identifying as his sole ground for relief that the circuit court erred in concluding that his habeas counsel did not provide ineffective assistance. (ECF No. 15, Ex. 47). His appellate brief, filed on August 31, 2020, repeated that his first habeas counsel was ineffective in refusing to challenge errors allegedly made in his juvenile transfer hearing. (ECF No. 15, Ex. 48 at 5-6). On August 27, 2021, the SCAWV issued a Memorandum Opinion and Order affirming the denial of Petitioner's second habeas corpus petition. *Mayo v. Searls*, No. 20-0340, 2021 WL 3833739 (W. Va. Aug. 27, 2021) ("*Mayo III*"). (*See also* ECF No. 15, Ex. 51). Specifically, the SCAWV found:

> While ineffective assistance of habeas counsel constitutes an exception to the doctrine of res judicata, pursuant to Syllabus Pt. 4 of *Losh*, petitioner had an obligation to raise all issues known to him at the omnibus hearing in *Mayo II*. Based upon our review of the transcript of the evidentiary hearing in the instant case, the transcript of the omnibus hearing in *Mayo II*, and our decision in *Mayo II*, we find that petitioner waived any alleged error during the transfer hearing because, when given the opportunity by first habeas counsel to raise such errors in *Mayo II*, petitioner "never alleged that the transfer of the first-degree robbery charge to adult court was erroneous." 2018 WL 2277135, at *3. We further find that first habeas counsel's performance was not ineffective under the *Strickland/Miller* test for not raising issues that petitioner waived during his testimony. Therefore, we conclude that the circuit court did not abuse its discretion in denying petitioner's second habeas petition.

*Id*. at *4.[6]

---

[6] Prior to filing the instant § 2254 petition, Petitioner filed two additional motions for reduction of sentence under W. Va. Crim. P. 35(b) in the Circuit Court of Cabell County. Both of those motions were denied by the circuit court. (ECF No. 15, Exs. 49, 50, 53, and 54).

**F.      Petitioner's initial section 2254 petition**

On March 2, 2022, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, asserting three grounds for relief:  (1) errors in juvenile transfer hearing; (2) ineffective assistance of habeas counsel; and (3) disproportionate sentence to that of his co-defendant.  (ECF 3 at 6-9).  On October 3, 2022, in accordance with the undersigned's orders, Respondent filed the instant Motion to Dismiss and Motion for Summary Judgment (ECF No. 15) and Memorandum of Law in support thereof (ECF No. 17), asserting that Ground One of Petitioner's § 2254 petition should be dismissed with prejudice as procedurally defaulted; Ground Two should be dismissed with prejudice as a non-cognizable claim; and that Respondent is entitled to judgment as a matter of law on the merits of Ground Three of the petition.[7]

On October 4, 2022, the undersigned entered an Order and Notice, in accordance with the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his right and obligation to respond to Respondent's motion.  (ECF No. 18).  On January 17, 2023, Petitioner filed his Response in opposition to Respondent's motion.  (ECF No. 23).  Respondent did not file a reply brief.  However, Petitioner subsequently filed what the court has construed as two unauthorized sur-replies and motions for expedited relief.  (ECF Nos. 26 and 29).  In those documents, Petitioner argues that Respondent's failure to file a reply should be treated as a concession to his arguments.[8] This matter is ripe for resolution.

---

[7]  Among other things, the undersigned's Order to Show Cause directed Respondent to address the timeliness of Petitioner's § 2254 petition.  (ECF No. 10 at 1).  Because Respondent agrees that Petitioner's petition was timely filed under 28 U.S.C. § 2244(d)(1)(A) (*see* ECF No. 17 at 20-22), the undersigned finds it unnecessary to address the timeliness issue in detail herein and deems the petition to be timely filed.
[8]  The language of the court's briefing order was permissive with respect to any reply by Respondent.  Thus, no reply was required and the undersigned construes Respondent's lack of reply to indicate that Respondent stands on the arguments made in his Motion to Dismiss and for Summary Judgment and is not conceding any of Petitioner's arguments.  Petitioner's motions for expedited relief will be denied by separate order.

## II.    STANDARDS OF REVIEW

### A.    Standards for relief under 28 U.S.C. § 2254(d).

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.  The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Where a claim has been summarily refused, the undersigned must simply determine whether that decision was legally and factually reasonable under clearly established federal law.  *See Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000) (When a state court summarily rejects a claim without setting forth its reasoning, the federal court reviews the record and the clearly-established Supreme Court law, but still "confine[s] [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'").

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings.  *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991).  Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

## B.   Exhaustion requirement under 28 U.S.C. § 2254(b).

Section 2254(b)(1)(A) of Title 28 of the United States Code, states that a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement.  28 U.S.C. §§ 2254(b)(1)(A), (b)(3).  "State prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Beard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (Exhaustion requires the habeas petitioner to "fairly present the substance of his claim to the state's highest court.")

In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV. *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.W. Va. 1995); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545 (S.D.W. Va. 1986). A petition for a writ of habeas corpus filed under the original jurisdiction of the SCAWV that is denied with prejudice following a determination on the merits will also exhaust the prisoner's state court remedies. *See Moore*, 879 F. Supp. at 593; *McDaniel*, 631 F. Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-909 (4th Cir. 1990) (*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87 (1997)).

Additionally, Petitioner must show that the federal claims he raised in state proceedings are the same as the claims he now seeks to raise in his federal habeas proceeding. *See Pitchess v. Davis*, 421 U.S. 482, 487 (1975); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The claims in both courts must "fairly present" the "substance" of the claim, based upon the same factual grounds, and must allege that the same federal constitutional right was violated. *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

### C.    Procedural default doctrine.

The doctrine of procedural default bars litigation of claims in a federal habeas corpus petition that were not adjudicated on their merits in state court where such claims are barred from further litigation in state court by operation of a state procedural rule. *See Boothe v. Ballard*, No. 2:14-cv-25165, 2016 WL 1275054 *46 (S.D. W. Va. Mar. 31, 2016), *aff'd*, 670 F. App'x 193 (4th Cir., Nov. 18, 2016).  "The procedural default doctrine operates to bar a federal habeas claim 'only if the rule of procedure . . . is determined to be an adequate and independent state-law ground for decision.'"  *Id.* at *47 (quoting *Thomas v. Davis*, 192 F.3d 445, 450 (4th Cir. 1999); *see also Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.").

However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions."  *Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *cf. Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) ("Although the doctrine of procedural default limits federal habeas review of state convictions, it does not provide an absolute bar.").  In fact, the procedural default doctrine provides for two exceptions where a petitioner can show: (1) cause for the default and prejudice therefrom; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Richmond v. Polk*, 375 F.3d 309, 323 (4th Cir. 2004).

"Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the procedural rule.  *Maples, supra*, 565 U.S. at 280.  The Supreme Court has not

"identified with precision exactly what constitutes 'cause' to excuse procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Generally, ineffective assistance of habeas counsel is not considered an external factor that would excuse the failure to exhaust a claim for habeas corpus relief. *See Maples*, 565 U.S. at 280 ("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'") (citing *Coleman*, 501 U.S. at 753); *but see Martinez*, 566 U.S. at 9-10 (finding "cause" based upon habeas counsel's failure to raise claims of ineffective assistance of trial counsel in initial habeas proceeding).

In *Boothe, supra*, the court summarized the procedural default doctrine as follows:

> The procedural default doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In addition, "[i]f claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts." *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 735 n.1). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted). "The procedural default doctrine . . . appl[ies] . . . whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted).

2016 WL 1275054 at *46.

## III. DISCUSSION

### A. Errors in juvenile transfer proceeding.

In Ground One of his § 2254 petition, Petitioner asserts that there were various errors in the proceedings to transfer his March 30, 2010 first degree robbery and attempted first degree robbery charges from juvenile court to the criminal court to be tried as an adult. Specifically, Petitioner contends that the following errors occurred: (1)

the juvenile transfer hearing was untimely; (2) the State failed to present evidence demonstrating that Petitioner was a juvenile at the time of the alleged crime; (3) the circuit court failed to make a careful and detailed analysis and review of Petitioner's home, family, and school environment prior to the transfer hearing; (4) the circuit court failed to order Petitioner to undergo a psychological evaluation prior to the transfer hearing; (5) the State failed to present evidence of the first degree murder charge to support the motion to transfer; (6) there was no testimony concerning Petitioner's rehabilitation; and (7) Petitioner was not permitted to confront his co-defendant. (ECF No. 3 at 5).[9] Notably, Petitioner's claims are grounded in violations of state, not federal, law.

Petitioner acknowledges that he did not exhaust these claims in the state courts but asserts that his habeas counsel failed or refused to present them in his initial habeas proceedings. (ECF No. 3 at 6, 12). Consequently, Respondent contends that these claims are procedurally defaulted and must be dismissed. Respondent's memorandum of law states in pertinent part:

> To properly exhaust a state claim, a habeas petitioner must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)). The "fair opportunity" requirement, however, requires more than simply placing facts before the court, or presenting a "somewhat similar state law claim." *Id.* (citations omitted). The exhaustion requirement mandates that a habeas petitioner "fairly present" the "substance" of his <u>federal</u> claim to the state courts in order to meet the exhaustion requirement that is a prerequisite to habeas review. *Id.* (citation omitted). In other words, a federal habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

---

[9] Petitioner's response brief added two more claims: (8) Petitioner was not given proper notice about his scheduled juvenile transfer hearing; and 9) the courts did not provide Petitioner with discovery evidence prior to his transfer hearing. (ECF No. 23 at 1-2).

(ECF No. 17 at 23) (emphasis added). Respondent contends that Petitioner did not properly exhaust his state court remedies with respect to his claims regarding his October 14, 2010 juvenile transfer hearing. (*Id.* at 25). Respondent further asserts that the state courts specifically found that Petitioner's claims concerning his transfer proceeding were waived under W. Va. Code § 53-4A-1(c) (an independent and adequate state law ground) and, thus, are procedurally defaulted and barred from review in this court. (*Id.* at 26-28). Respondent also contends that Petitioner has not sufficiently established cause and prejudice to overcome such procedural default. (*Id.* at 29-31).

As further noted by Respondent, the Fourth Circuit has recognized that, under AEDPA, "a petitioner may obtain relief from a state court judgment 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008) (quoting 28 U.S.C.A. § 2254(a)). (ECF No. 17 at 32). Petitioner's § 2254 petition and his response to Respondent's motion make it clear that he is asserting violations of West Virginia Code § 49-4-710[10] with respect to the errors in his juvenile transfer proceeding. (ECF No. 3 at 5; ECF No. 23 at 2-7).

Thus, the claims asserted in Ground One are not alleged as violations of clearly established federal law and, therefore, are not cognizable in federal habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state-law questions."). Therefore, they must be dismissed on that basis alone. Accordingly, the undersigned proposes that the

---

[10] Respondent's memorandum of law clarifies that, at the time of Petitioner's transfer hearing, the statute governing the transfer process was contained in West Virginia Code § 49-5-10. However, Chapter 49 of the West Virginia Code was recodified in 2015 and the transfer provision was moved to § 49-4-710. Nonetheless, there are no substantive differences between the current and previous versions of the statute. Accordingly, the undersigned will cite to the current statutory provision.

presiding District Judge **FIND** that Ground One of Petitioner's § 2254 petition is not cognizable under § 2254 and should be summarily dismissed with prejudice.

### B.    Ineffective assistance of habeas counsel claims.

In Ground Two of his § 2254 petition, Petitioner contends that his first habeas counsel, Tim Rosinsky, provided ineffective assistance by failing to challenge the adequacy of his juvenile transfer proceedings.  (ECF No. 3 at 7).  Petitioner's filings emphasize that Petitioner's first habeas counsel failed to obtain the transcript from his juvenile transfer hearing and, thus, failed to properly investigate and present the alleged errors made therein in his omnibus habeas corpus proceedings.  (*Id.*)  His response further asserts:

> Mr. Rosinsky knew that Mr. Mayo wanted to argue the errors that occurred during Mr. Mayo's juvenile transfer hearing, but Mr. Rosinsky continued to tell Mr. Mayo that no errors occurred and that it wouldn't 'fly' in court and that was because Mr. Rosinsky had never had possession of Mr. Mayo's juvenile transfer hearing transcripts; because Mr. Rosinsky never filed to get them; because Mr. Rosinsky never looked up West Virginia Code § 49-4-710; and because Mr. Rosinsky failed to properly investigate Mr. Mayo's claims.

(ECF No. 23 at 9-10).

However, as addressed by Respondent's motion documents, claims concerning ineffective assistance of habeas counsel are not cognizable as stand-alone claims in federal habeas corpus.  *See* 28 U.S.C. § 2254(i); *see also Coleman v. Thompson*, 501 U.S. 722 (1991); *Miller v. Sallaz*, No. 5:20-cv-00661, 2022 WL 4103848, at *5 (S.D.W. Va. July 21, 2022), *report and recommendation adopted*, 2022 WL 4084226 (S.D.W. Va. Sept. 6, 2022), *appeal dismissed*, No. 22-7180, 2023 WL 4181320 (4th Cir. June 26, 2023); *but see Martinez*, *supra*, 566 U.S. at 10.[11]  (ECF No. 17 at 31-32).  Respondent further asserts

---

[11] Petitioner's § 2254 filings do not raise any claims that implicate *Martinez*.

that "[b]ecause the Constitution does not guarantee the existence of state post-conviction proceedings, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas application." *Lawrence, supra,* 517 U.S. at 717 (quoting *Bell-Bay v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007)); *see also Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) ("claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief.") Consequently, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's claim of ineffective assistance by his habeas counsel is not cognizable for review in this federal habeas proceeding and should be summarily dismissed with prejudice.

### C.    Disproportionate sentence claim.

In Ground Three of his § 2254 petition, Petitioner asserts that his sentence is disproportionate to that of his juvenile co-defendant. His petition asserts:

> My co-defendant and I were both 17 years old at the time of the first degree armed robbery charges. We both had the very same [or] similar backgrounds in our juvenile records. We both used fake (pellet) guns and all of the evidence was found at his residence. I was sentenced to 20 years as an adult for my role in the crime; and my co-defendant was sentenced to 2 years as a juvenile for his role in the crime. We were both 17 years old and played the same exact role.

(ECF No. 3 at 8). As relief, Petitioner seeks to have his 20-year robbery sentence dismissed, lowered to 10 years, or run concurrent with his 30-year sentence for second degree murder. (*Id.* at 15).

Respondent's memorandum of law acknowledges that, in the state courts, "Petitioner clearly invoked the Eighth Amendment as a basis for his request for relief[,]" but arguably makes two distinct claims about his sentence. (ECF No. 17 at 34). First, Petitioner contends that his 20-year sentence for first-degree robbery is

unconstitutionally disproportionate to the offense; and second, that it is unconstitutionally disparate to the juvenile sentence that his co-defendant received. (*Id.* at 34-35).

The United States Supreme Court has recognized "a narrow proportionality principle" grounded in the Eighth Amendment's cruel and unusual punishments clause, that "applies to noncapital sentences" such as Petitioner's. *Ewing v. California*, 538 U.S. 11, 20 (2003). Thus, the Eighth Amendment "prohibits . . . sentences that are disproportionate to the crime committed." *Id.* at 22. To that end, the Supreme Court identified three relevant factors to be considered in determining whether a particular sentence violates the Eighth Amendment: (1) the gravity of the offense and harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *See Solem v. Helm*, 463 U.S. 277, 292 (1983). At bottom, the Eighth Amendment prohibits only "extreme sentences that are 'grossly disproportionate' to the crime." *Ewing*, 538 U.S. at 23 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part)). (ECF No. 17 at 35). The Court has further emphasized that "successful challenges to the proportionality of particular sentences should be "exceedingly rare[.]" *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (citing *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

Respondent asserts that Petitioner's "main contention" is "that his sentence is disproportionate when viewed alongside the sentence received by his co-defendant" and such a claim has not been "squarely addressed" by the Supreme Court. Respondent's memorandum of law further states:

While the issue of sentences of one individual when compared to that of a co-defendant is one that is more frequently litigated in State courts, the Supreme Court has tangentially addressed such claims by noting the need for individualized sentences. In this respect, the Supreme Court has held that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). In other words, "the punishment should fit the offender, and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). Sentencing courts are permitted to "tailor the sentence in light of other statutory concerns . . . ." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal quotation marks and citation omitted). "The sentencing process is particular to each defendant, of course, and a reviewing court must consider the facts and circumstances of the case before it." *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016).

(ECF No. 17 at 36).

Based upon this clearly established federal authority, Respondent contends that "Petitioner has not identified any basis for his claim that his sentence was either constitutionally disproportionate to the offense, or that his sentence was unconstitutionally disparate when compared to the sentence received by his co-defendant." (*Id.* at 37). He further argues that, in *Mayo II*, the SCAWV "applied the correct legal principles when assessing the proportionality of Petitioner's sentence to the offense of first degree robbery." (*Id.*) His memorandum further asserts:

It reviewed Petitioner's sentence in light of the facts attendant to his conviction of first degree robbery, and concluded that it neither shocked the conscience, nor did it amount to a disproportionate sentence in light of the "nature of the offense committed as well as petitioner's previous behavior. [*Mayo II*, 2018 WL 2277135, at *3.]

(*Id.*) Respondent emphasizes that Petitioner's record admittedly "reveals a clear escalation in criminal conduct in the year leading up to his eventual conviction[,]" included his failure to appear for a juvenile delinquency trial, and culminated in his being

convicted of murder in connection with another robbery, in which his juvenile co-defendant was not involved. (*Id.*) Respondent further asserts:

> It should not be overlooked that Petitioner entered into a plea agreement, wherein he specifically agreed to the State making a recommendation of twenty-years with respect to his first degree robbery conviction. (Ex. 16). Petitioner's complaint that his juvenile co-defendant was not treated as harshly as he was is entirely irrelevant for purposes of whether Petitioner's sentence was constitutional. Petitioner knew that, by pleading guilty to the offense of first degree robbery, he was exposing himself to a sentence that mandated a minimum ten-year prison sentence with no statutory maximum. (Ex. 18 at 8 (Petitioner acknowledging that "there is no limit on how many years" the court could impose with respect to his sentence for first degree robbery)). There is also nothing in the record to indicate that any portion of his plea agreement, or the sentence that he ultimately received, was tied to his co-defendant's case in any way.

(*Id.* at 37-38).

Thus, Respondent contends, the SCAWV found "sufficient and reasonable differences between [petitioner] and his co-defendant in the [first degree] [r]obbery to find the defendants differed in their criminal backgrounds." *Mayo II*, 2018 WL 2277135, at *3. (*Id.* at 38). Respondent further argues that "Petitioner's attempt to claim there was little difference between he and his co-defendant simply belies the record." (*Id.*) Therefore, Respondent asserts that the state courts' denial of habeas corpus relief concerning his disproportionate sentence claim was not an unreasonable application of clearly established federal law considering the evidence of record. (*Id.* at 39).

Petitioner's response reiterates his arguments that he and his co-defendant stood in similar shoes but were disparately sentenced. (ECF No. 23 at 11-13). He clarifies that his co-defendant received a sentence of six months to two years as a juvenile compared to his 20-year sentence. (*Id.* at 11). He further contends that his co-defendant was the "prime mover" when the crimes were committed, and all the evidence was found at the co-defendant's house. (*Id.* at 12). Petitioner likens his case to that of *State v. Buck*, 314

S.E.2d 406 (W. Va. 1984), in which the SCAWV reversed as disproportionate a 75-year sentence for an aggravated robbery conviction when a codefendant received a one-year sentence on a grand larceny conviction.  (ECF No. 23 at 12-13).

Petitioner's response further attempts to add claims that his sentence, as compared to that of his co-defendant, violated his rights to due process and equal protection under the Fourteenth Amendment.  (*Id.* at 11).  However, because those claims are raised, for the first time, in Petitioner's response brief, and not in the § 2254 petition itself, this court should not consider them. *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (Ordinarily, new claims or arguments raised for the first time in a reply brief or memorandum will not be considered).  Moreover, Petitioner failed to exhaust those claims in the state courts, and they are, consequently, procedurally defaulted and Petitioner has not demonstrated cause and prejudice to overcome his procedural default of those claims.  Thus, this court is barred from considering them.

With respect to Petitioner's exhausted Eighth Amendment claim, however, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state court decisions were contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts, and Respondent is entitled to judgment as a matter of law on Petitioner's Eighth Amendment claim concerning a disproportionate sentence.

## IV.  RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss and for Summary Judgment (ECF No. 15), **DENY** Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 3), and **DISMISS** this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to Petitioner, and to transmit a copy to counsel of record.

February 15, 2024

Dwane L. Tinsley
United States Magistrate Judge